Good morning. Good morning. Good morning again, Your Honors, and may it please the Court, my name is Ben Wohlfeil and I represent the Appellant, Premier Construction & Remodel, Inc. and Robert DeVille. Your Honors, this case is about an insurance company who has not met its full duties under the law to defend its insureds and who in bad faith repeatedly misrepresented whether key terms were on the insurance policy, including remodeler's coverage. Oh, go ahead. Well, let's start with, do you agree that to establish a duty to defend that the FAC needs to allege both an occurrence and a loss of use? It needs to allege the potential for an occurrence and a loss of use. Yes, and I recognize that it needs to allege a potential, yeah, a potential coverage. Yes, yes, and Your Honor, I want to make sure I've answered your question. But that coverage comes from an occurrence and a loss of use, right? It comes from facts that allow the possibility of occurrence and loss of use. I think that's the, I think that might be a mis, I don't want to say misstatement, that's a strong word, but I think you might be conflating the two. I mean, they have to show a potential for loss of use, but they still have to show how the loss of use, I don't think, I think you seem to be implying that they could, they could allege facts that possibly could have led to loss of use. Like, they have to allege a discrete loss of use and that that could potentially have been met. What was the loss of use that they actually alleged here? The access to the condo. What, what, what, I'm sorry. No, go ahead. What, I don't really see that alleged. There's a, there's an allegation of this missing garage door opener and a failure to return the keys, but where, where is it alleged that that prevented access to the condo? So, the rule is that if there are any unresolved factual disputes and viewing all doubt in favor of the insured as it relates to coverage, with that analysis in mind, the inference clearly is that he could not access the condo without the keys. That's the purpose of the keys. So is your argument that the only alleged property damage comes from the claim that the defendants failed to return plaintiff's keys in the garage door opener? It flows through that, yes. So what are the facts in the FAC that suggest that Kearns, the Kearns were unable to use their property? The fact of the missing keys is sufficient to create an inference that they did not have access to their condo and the argument that they unreasonable, that my clients allegedly unreasonably delayed the remodel project, following immediately after the allegation of the missing or failed to return keys, I think creates the inference. It seems to me that we need to take several steps, that one, that a missing garage door opener, one missing set of keys means that they can't get into the residence and then also that that somehow was so significant that it delayed work on the residence. I mean, I don't want to get into the facts of the case, but most people can replace keys pretty quickly. So I mean, I just don't understand. Are we, is that what we're supposed to do, is make those sort of, take those two factual steps? On a motion for summary judgment, my client is entitled to all reasonable inference in its favor. Isn't that the question? It's a reasonable inference, not all inferences. That's fair. Yes, Your Honor. It is a reasonable inference and resolving any doubt under the substantive California case law, resolving any doubt in their favor, combined I think establishes that what Kearns was alleging was that he had his project delayed, he lost his building permits, he suffered penalties from the HOA, and that those flowed through his inability to use the condo and that in turn flowed from his lack of access because he didn't have the keys. I'm sorry, I don't have the citation in front of me, but I cited a district court. So you're asking us to infer that he didn't have the keys and that caused him to not get into the home for how long? It's not determined, it's not specified in the First Amendment complaint, so it's not clear. So is that reasonable to assume that if I don't have keys to my house, I'm just going to not make any attempt to get into the home and maybe just stay away from it for a month or something like that? So this was not, it's not also, excuse me, it's also not clear when he learned that he did not have the keys. It's fairly clear based on reasonable inferences that Mr. Kearns was not living through the remodel in the house, in the condo, excuse me. Whether he recognized right away as soon as DeVille left the job or whether he recognized it later is unclear. But more time can elapse and the building permits have deadlines where you can get closer to the building permits. The HOAs have their own deadlines and so by the time he learns of the missing keys and his lack of access for his new contractor, who he presumably needed, those deadlines could have passed and my client would have been vulnerable to being paid, forcing to pay damages for those theories at a trial. Pretty attenuated counsel. Discreet. And not, I mean, I'm not even sure your amended complaint, or yeah, the complaint actually alleges everything you just said. I'm not sure that sitting on the bench reading the complaint, I would have come to even the same theory that you just announced, even if that were a viable theory. In paragraphs 14G and H of the first amended complaint, it alleges unreasonable delay and it mentions the two loss of use damages that I just mentioned. Building permits and HOA penalties. It's in my opening brief. Oh, I don't disagree with you about the losses, but the tie-in, the connection between the lost keys and the lost, I mean, I've never heard of a situation where lost keys lead to lost permits. I'm not saying that the complaint necessarily had merit. I'm saying it put my clients at risk. And the scope of the complaint was broad enough that the case on this theory would have been able to go to a jury and the jury make a decision. When we're making a determination about whether it's a reasonable inference, are we allowed to look at the way that the complaint is written? I'm looking at paragraph 14F and it's talking about a failure not only to return the garage door opener and keys, but also a failure to return construction materials and a failure to remove personal property from the site, a failure to remove a lockbox. To me, sort of this catch-all nature of this paragraph makes it hard then to connect this to any delay on the project, because obviously a failure to remove some personal property isn't, you know, it's not keeping anybody out of the house and causing a delay and causing us to miss deadlines now for building permits and things like that, so. Yes, the key issue is the starting point. What is the scope of the complaint and what does it do, how does it put my clients at risk? Is there a risk that on this theory, paragraphs 14F, G and H, that a jury could impose damages on my clients? And the answer is yes. And the reasonable inferences from that, I think, are that not having the keys creates a loss of use or loss of access, which in turn has downstream penalties. Now, might the jury have decided against Kearns and the underlying action? Sure, he could have lost, but that's not how the duty to defend is analyzed. I wanted to return to the district court opinion that I cited that was one of the early decisions on the COVID line of cases and the extent to which insurance coverage covered government shutdowns. The court there noted that you can take a set of keys, drop them in Lake Michigan, and that's an accidental loss, right? And it deprives you of the use of your car, but it's not. That's interesting to me, because what was the allegation for how these were, I mean, this goes more to whether it was an accident at all, but what were the allegations that you believe showed that this was an accident, I mean, as opposed to just, we just didn't return them? The following example I think may be helpful, Your Honor. If my client in the underlying case had testified, and if he'd been asked the question, what happened to the keys? And if he had said, I don't know, I must have misplaced them at another one of my job sites. That would establish an accident, because misplacing keys is unexpected. That would be within the term of accident, it would be within the scope of the First Amendment complaint, and a jury would have to weigh his credibility and decide whether it made any sense. They could find that he accidentally lost the keys at some point during the remodel job, did not have them, then once Kearns realized that my clients were no longer working on the job, he could have come back and said, return the keys, and my client could have said, I'm sorry, I lost them, I don't have them, they're at another job site, maybe. That creates the delay, and that creates the... But what was alleged in the complaint? In the First Amendment complaint? All you said is we didn't return the keys. What was alleged in the complaint as to why the keys? Nothing. Okay. So it's an unresolved... So you got counsel once the insurance company realized that there had been some property damage. They took... They gave counsel under a reservation of rights, correct? Correct. So you're trying to get counsel from the time of tender? Yes. And you're also trying to say that the complaint adequately pleads an occurrence of some sort, right? Yes. And your evidence of the occurrence is the failure to return the keys in the garage door opener? Yes. Do you have a good case for me on that, where that's an occurrence? The closest factual cases that we've been able to find are the LaGrasa case, which we discussed at length in the briefing. And forgive me, I can't recall the name of the case, but it's the case, I believe it's from Central District, I'm sorry, District Court in either Illinois or Michigan, discussing dropping the keys in Lake Michigan. I block quoted it in my reply brief. In those two circumstances, it's pretty clear what they're discussing is the failure to do something or the loss of something and inability to do something creates an occurrence or accident. So you didn't tell me what amount of time you want to reserve, and I don't want to tell you how to do that, but you're free if you want to hear what the other side said and then come back and respond to that if you choose. But you're free to use all 20 minutes if you want to. Thank you, Your Honor. I want to spend a brief amount of time dealing with the sanctions order. Obviously, as a fiduciary of my client and officer of the court, the MSJ by far and away comes first, and this is a distant second, but I just wanted to note that at this point I don't see a meaningful dispute that the District Court had a standing order, it relied on the standing order, and yet in key ways did not follow the order, and if it had, much of the grief that the court was experiencing... I thought the District Court said that you, I mean you globally, I don't mean you personally, had violated orders, and you're disputing that, whether those orders were violated. I believe the court did conclude that we had violated the standing order. I'm not disputing that there were, I'm not disputing that there were some violations of the standing order. Isn't that the beginning and the end of the discussion then? No, because the court's concern was the volume, essentially, of the work that the court perceived to have been created. Is it true that you filed the same affidavit 28 times? I don't recall which of the affidavits it was, but I'm not disputing that point. Can you explain to me how the same affidavit gets filed 20, I've never heard of something like that happening. Each of the affidavits had a different set of exhibits attached to it. So you just kept expanding the affidavit? Not expanding the affidavit, excuse me, I mean we expanded the declarations to the affidavit, so in that sense the affidavit was different and expanded, but the content... So this was an affidavit just trying to get in documents and you just kept trying to get in more and more and more documents. Yes. I think there was confusion on both sides of the aisle about how exactly the filing and labeling worked because, not that I'm drawing attention to it, but both sides had issues with that specific issue. With that, Your Honor, I would like to reserve the rest of my time. Thank you very much. Good morning. Good morning, Your Honor. I'm Margaret Park, counsel for the responding party Mesa Underwriters' Specialty. Keep your voice up if you would, thank you. With all due respect, I think Your Honors get the issue here. This is a very simple case about contract interpretation. What MUSIC needed to do when they were tendered with the complaint was to evaluate what was presented in the tender, and that was the two complaints, the complaint and the first amended complaint. And in this case, as the district court found, there was not any facts that were alleged that would trigger coverage under the policy. Well, let me play the devil's advocate and just say, because obviously counsel for the appellant is asking us to make a number of inferences, and its questions are reasonable. So I'll just give you a couple, and you can tell me why they are or are not reasonable or conceivable. Isn't it conceivable that the FAC alleged loss of use when it alleged delays or failure to return the keys or the garage door opener? And also, why is it not conceivable that Premier could abandon the job site but not intentionally fail to return the keys? Because it seems he's asking us to go that route. Right. So why is that not reasonable, and why is it not conceivable? I get it, Your Honor. In the first instance, what the court needed to do was to evaluate whether or not there was an accident. If there wasn't an accident, if there was deliberate or intentional conduct, there is no coverage. You must have accidental conduct or an occurrence coupled with the property damage. There was a loss of use. There was no clear loss of use alleged in the context of accidental conduct. The paragraph 14. Is your position on that because of how the keys might have been lost? Because they didn't specify. Because you could have. I mean, his example of dropping them in Lake Michigan, that would be covered, wouldn't it, or not? Under California law, the intent or the mindset of the party acting, the allegedly liable party, is not determinative. What courts look at is whether or not the conduct itself is deliberate. In the context of the first amended complaint, it was alleged that the insured left the property, kept the keys, kept construction materials, kept a garage door opener, and did a number of items. At the same time, this is alleged in the first amended complaint, that they walked off of the job. So it was reasonable, and it is reasonable, to assume that in the course of. You're not resting. Your argument doesn't rest on lost keys. It actually rests on why the keys were lost. And your point is they didn't allege a covered. They could have alleged, theoretically, in some universe, they could have alleged some accident that encompassed lost keys, but they didn't allege that here. And the reasonable inferences are that it wasn't covered because they took them off of the site with them. Precisely. And, Your Honors, even after MUSIC disclaimed coverage in January, it advised the client and the insured, present more evidence and we'll reconsider it. Four months went by before there was a retender. And even in the retender in June of 2016, Your Honors, there were no allegations about an accidental loss of the keys. What was alleged at that point and what was presented to MUSIC and what it reconsidered was the property damage to a dishwasher and to stucco and to cut wires. They got in a bind because you actually covered it when actual damages, cover damages, were presented. And so then they had to kind of reach back to this issue. And that's what's happened. After the fact, we have ended the pleadings, but not before. Not when during this four- or five-month period after the disclaimer, none of this information was presented to MUSIC. And even when it did reconsider, that information wasn't presented to it. So why isn't it reasonable to read this, that there was a failure to return keys in a garage door opener, which we know are used to access a house, and to say, well, that creates a loss of use of the residence. I mean, why is that unreasonable? Because in the context, Your Honor, of the complaint, the loss of keys was alleged in the breach of contract cause of action. When you read the complaint, paragraph 14F is in a breach of contract cause of action. The allegations of negligence, accidental conduct, nowhere mention a loss of keys. What it talks about are other conduct that was subsequently addressed when more information was given to MUSIC. MUSIC was presented with complaints and read the complaints in their totality, and none of this reasonably inferred that there was accidental conduct causing property damage as defined by the policy. You're still seeking $127,000, or $127,500 for reimbursement for the settlement, is that correct? No, Your Honor. Oh, you're not seeking that at all? No. MUSIC has dismissed its claim that we are not, MUSIC is not seeking any affirmative relief. And you're not seeking relief for the time that you took coverage, where you defended under reservation of rights? That's correct. Even though you might like to say that that wasn't a good idea. So we're really talking about that first period of time, and do you want to talk about the sanctions? Your Honor, I think the record speaks for itself. We had over 500, 532 additional facts to respond to in this case. The pleadings were over 600 pages. This is not a complicated case. This is simply a case of a construction defect matter. The insured waited for almost a year, over a year, before tendering this claim. And when MUSIC denied it, waited another four months before presenting additional facts that aren't even the facts that we're talking about here today on appeal. MUSIC picked up the defense under reservation of rights, as it has a right to do. It defended the insured. It settled the case. When it reserved its right, it did so under law. That was entitled to do under the terms of the policy and under law. In this case, this is one of the cases, no good deed goes unpunished. MUSIC did what it was supposed to do and finds itself here today having to defend itself. The reason why I asked about the 127.5 is initially you did demand reimbursement for that, correct? We reserved our rights to seek reimbursement, and at the time of the settlement there was a reservation made to recoup the amount that was paid in settlement. But you never actually made a demand that he pay, that he reimburse you for that. Your Honor, I'd have to go back to the history in terms of what was demanded. Well, because there was a declaratory judgment where he—I thought that was one of the issues here. That was the remaining claim was a declaratory judgment from Premier saying we don't owe the 127.5. And then the parties dismissed that. But your assertion to the court today is if this case goes away, you're not going to come back and say, oh, by the way, you still owe us 127.5. That's correct, Your Honor. That claim has been dismissed. That plays into your no good deed goes—I thought that was sort of what was going on here, was they were trying to offset that, but they're not even trying to offset that. That's correct, Your Honor. Do either of you have any additional questions? I don't. No, I don't. Thank you. You're free to use more time if you wish, but we don't have additional questions. I have nothing further. I have no further questions. Thank you, Your Honors. Thank you. Your Honors, I'd like to clarify a couple of points. The first comment is a factual matter. Counsel mentioned that the First Amendment complaint alleged that my clients kept the keys. That's not accurate. That's just nowhere in the First Amendment complaint. Does it say they kept the keys? Does it say they had the keys at any particular time or what happened to the keys? They had to have access to the home when they picked up everything and left, right? No. It does not say that they picked up everything from the house and took it with them. At some point, they had to take things from the house. At some point during the construction job, yes. So from day one, they had access. What happened after day one of the remodel job is an unanswered question. But it says that they failed to return the keys, so that—I mean, it implies that they kept them, doesn't it? No. It's conceivable that they did not keep them, and that's the key. Reasonable versus conceivable. Do we know where the keys are? Do we know what happened to the keys? No. The mystery of the keys is unsolved. Yes, the mystery is unsolved, but that's an unresolved question because it allows—that creates coverage because it allows for the possibility that they accidentally misplaced them. It does. And it doesn't have to be reasonable. It doesn't have to be believed by a jury. It just has to create risk to the insurance, and it does under these circumstances. The reality is they could have—my clients could have been hit with a judgment in the underlying case had they not been defended, and it could have been based on that theory. And that's why the insurance company needed to come in and defend immediately. Your client should be pretty grateful that they're not seeking the 127.5 in reimbursement. It seems like you've got a pretty good benefit here, and you're not willing to just accept that.  Well, you must have thought it was. You filed a declaratory judgment claim asking that the court find that you weren't liable for it. And that was a meritorious request. Once we had filed the lawsuit, the remaining issues to make sure we addressed all the issues was important because—and this is an issue that came up with counsel's argument—the June 13, 2018 letter did demand payment of 127.5. I'm happy to get the citation to the record if the court would like me to. But you agree that they're not seeking that anymore? That's our understanding at this time, yes. One final point, Your Honor, is the issue of the labels in the complaint. Both sides went back and forth in the brief about this issue that the idea that the paragraph 14F is in the breach of contract cause of action versus the negligence cause of action does not matter. The facts are what they are in the allegation. That cause of action was also adopted in the negligence cause of action, and that also is not determinative. It's the nature of the allegations and what they say. So reading the complaint as a whole and keeping in mind the flexibility in California courts of pleading put the insureds at risk again because of this conceivable theory. With that, Your Honors, unless the court has any questions, I have no more arguments. There don't appear to be additional questions. Thank you both for your argument. This matter will stand submitted. This court is now in recess for the week. All rise. This court for this session stands adjourned.
judges: CALLAHAN, NELSON, THOMAS